IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILMER B. GAY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT D. SHANNON, et al., | : | NO. 02-CV-4693 |
| Defendants | : | |

**ORDER**

AND NOW, this     day of                , 2003, it is ORDERED that the Motion to Dismiss

of Commonwealth defendants — Secretary Beard, Former Chief Grievance Coordinator James,

Chief Hearing Examiner Bitner, Former Superintendent Vaughn, Superintendent Shannon,

Deputy Superintendents Petruccia and Kneiss, Hearing Examiner Canino, Captains Brennan and

Mooney, Lieutenant Wade, Sergeant Meyers, Corrections Officer McCusker, Ms. Dotter

(retired), and Mr. Cudwadie is GRANTED. Plaintiff's complaint against the Commonwealth

defendants is DISMISSED with prejudice.

BY THE COURT:

_____

NORMA L. SHAPIRO,      S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILMER B. GAY,                :    CIVIL ACTION
           Plaintiff          :
                              :
           v.                     :
                              :
ROBERT D. SHANNON, et al.,    :    NO. 02-CV-4693
           Defendants      :

## MOTION TO DISMISS OF COMMONWEALTH DEFENDANTS

Commonwealth defendants Beard, James, Bitner, Vaughn, Shannon, Petruccia, Kneiss, Canino, Brennan, Mooney, Wade, Meyers, McCusker, Dotter, and Cudwadie hereby move this Court to dismiss plaintiff's claims in the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), and 12(b)(6), incorporate the attached memorandum of law, and state:

1. Plaintiff inmate Wilmer Gay, AF-2709, filed a *pro se* amended federal complaint on or about January 13, 2003.

2. Moving defendants are Commonwealth defendants Secretary Beard, Former Chief Grievance Coordinator James, Chief Hearing Examiner Bitner, Former Superintendent Vaughn, Superintendent Shannon, Deputy Superintendents Petruccia and Kneiss, Hearing Examiner Canino, Captains Brennan and Mooney, Lieutenant Wade, Sergeant Meyers, Corrections Officer McCusker, Ms. Dotter (retired), and Mr. Cudwadie. Non-moving defendant is William Fulmer, an inmate.

3. Gay is suing each Commonwealth defendant in their official and individual capacities.

4. Gay alleges First, Eighth and Fourteenth Amendment Due Process rights violations pursuant to 42 U.S.C. §§ 1983, 1985(2), and 1986, as well as state law claims, for numerous allegations concerning the treatment of his personal/legal property, placement in restricted

housing, and disposition of his grievances.

6. Gay has failed to state a constitutional claim.

7. Sovereign immunity bars plaintiff's state law claims against moving defendants.

8. Gay is not entitled to compensatory damages because he did not suffer any physical injury in connection with his claims.

9. Gay has failed to state a claim upon which relief may be granted.

WHEREFORE, this Court should grant moving defendants' motion to dismiss as set forth in the proposed order.

D. MICHAEL FISHER
ATTORNEY GENERAL

BY: *Patrick J. McMonagle*
Patrick J. McMonagle
Deputy Attorney General
Identification No. 83890

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone No. (215) 560-2933
Fax: (215) 560-1031

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILMER B. GAY,                          :    CIVIL ACTION
        Plaintiff                :
                              :
     v.                              :
                              :
ROBERT D. SHANNON, et al.,               :    NO.  02-CV-4693
        Defendants               :

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**COMMONWEALTH DEFENDANTS' MOTION TO DISMISS**

## I.    PROCEDURAL HISTORY

Plaintiff inmate Wilmer Gay, AF-2709, filed a *pro se* amended federal complaint on or about January 13, 2003.  Gay alleges First, Eighth and Fourteenth Amendment Due Process rights violations pursuant to 42 U.S.C. §§ 1983, 1985(2), and 1986, as well as state law claims, for numerous allegations concerning the treatment of his personal/legal property, placement in restricted housing, and disposition of his grievances.

The defendants are Department of Corrections ("DOC") Secretary Beard, Former Chief Grievance Coordinator James, Chief Hearing Examiner Bitner, Former Superintendent Vaughn, Superintendent Shannon, Deputy Superintendents Petruccia and Kneiss, Hearing Examiner Canino, Captains Brennan and Mooney, Lieutenant Wade, Sergeant Meyers, Corrections Officer McCusker, Ms. Dotter (retired), and Mr. Cudwadie ("Commonwealth defendants").  Gay is suing each Commonwealth defendant in their official and individual capacities.  William Fulmer, another inmate, is also a defendant.

Commonwealth defendants now move to dismiss the complaint against them pursuant to Fed.R.Civ.P. 12(b)(1), and 12(b)(6).  Gay has failed to state a constitutional claim, sovereign immunity bars plaintiff's state law claims against moving defendants, and Gay is not entitled to compensatory damages because he did not suffer any physical injury in connection with his

claims.

## II.    RELEVANT FACTUAL ALLEGATIONS

Plaintiff Wilmer B. Gay is an inmate currently incarcerated at the State Correctional

Institution ("SCI") at Huntingdon.  Complaint at ¶ 2.  Gay was convicted in April of 1972 and

since then, has vigorously challenged his conviction via direct and collateral appeals, including

*habeas corpus* petitions in state and federal courts.  *Id.* at ¶¶ 18-21.  After he was granted a

requested transfer to SCI-Mahanoy in May of 1995, Superintendent Dragovich permitted Gay to

retain much of his voluminous accumulated property in his cell, including five (5) boxes of legal

material, law books, two (2) boxes of non-legal personal property, and one (1) television/radio.

*Id.* at ¶¶ 22-3.  After Gay arrived at SCI-Mahanoy, he has also provided legal assistance to other

inmates, one of whom was Bobbie Sims.  *Id.* at ¶ 24.  As a result, Gay acknowledges that "he has

accumulated an excessive amount" of legal material.  *Id.* at ¶ 24.

Sometime in the fall of 1995, Bobbie Sims was transferred to SCI-Pittsburgh.  *Id.* at ¶¶

28-30.  Almost five (5) years later, in June of 2000, Gay received correspondence from Angus

Love, Esq., who requested that Gay testify on Sims' behalf at the trial, *Sims v. Dragovich*, 95-

CV-7653, (E.D.Pa.).  Superintendent Shannon[1] received a court order directing him to deliver

Gay to the U.S. Marshals, who would transport him to Philadelphia for his court appearance in

*Sims v. Dragovich*.  *Id.* at ¶ 33.

In anticipation of his Philadelphia court appearance, Gay was scheduled to transfer to

SCI-Graterford in September 2000.  *Id.* at ¶ 57.  Prior to his transfer, Lt. Brennan summoned Gay

to the property room.  *Id.* at ¶ 34.  Upon arrival, Lt. Brennan informed Gay that he had to sign a

---

[1] Superintendent Shannon replaced Superintendent Dragovich at SCI-Mahanoy in January 2000.

2

cash slip to have eight (8) record boxes of legal material mailed out of SCI-Mahanoy. *Id*. at ¶ 35. Gay protested that he needed that legal material to conduct his state and federal appeals of his conviction. *Id*. at ¶¶ 38-40. Therefore, Lt. Brennan granted Gay's request to come back the next day and retain a 400 page *habeas* petition for one lawsuit, a mandamus petition for another lawsuit, and unspecified materials necessary to file yet another petition to Attorney General Fisher to investigate the Philadelphia District Attorney's Office. *Id*. at ¶¶ 42-43, 45. Lt. Brennan determined that Gay would have to sign a cash slip to mail the rest of the material — now seven (7) boxes — out of the Institution. *Id*. at ¶¶ 42-3, 48.

Gay nonetheless protested the compromise with Lt. Brennan by submitting a request slip directly to Superintendent Shannon, which was rejected as procedurally deficient because Gay failed to first attempt to resolve the matter informally with Lt. Brennan . *Id*. at ¶¶ 44, 49. Therefore, Gay filed a request slip to his Unit Manager who, evidently, did not respond in a manner favorable to Gay. *Id*. at ¶ 50. Two weeks later, Gay filed an official grievance with Ms. Dotter, which outlined his dissatisfaction with Captain Mooney and Lt. Brennan's intent to mail some of his boxes out of the Institution. *Id*. at ¶ 51. Ms. Dotter returned the grievance to Gay without an official number because it was untimely and deficient in form. *Id*. at ¶ 52. Dotter rejected two more Gay grievances, which demanded an extension. *Id*. at ¶¶ 53-4, 96-98.

On September 6, 2000, Gay was transferred to SCI-Graterford, but continued to press Ms. Dotter for an extension during his five (5) week stay at SCI-Graterford. *Id*. at ¶ 57. While at SCI-Graterford, Gay sent a request slip to Superintendent Shannon, protesting Ms. Dotter's refusal to accept his untimely grievance against Captain Brennan. *Id*. at ¶¶ 100-02. Ms. Dotter, responding on Superintendent Shannon's behalf, refused to accept the untimely grievance. *Id*. at ¶ 104. Again, Gay sent Superintendent Shannon a request slip protesting the handling of his

3

legal material and Ms. Dotter's refusal to accept the grievance . *Id*. at ¶ 105. This time,

Superintendent Shannon responded on his own behalf and rejected Gay's request. *Id*. at ¶ 111.

Upon Gay's return to SCI-Mahanoy in October 2000, he learned that his accumulated

legal material still remained in the Institution's property room pending Lt. Brennan's return to

duty. *Id*. at ¶ 132. In early November, Gay submitted another grievance to Ms. Dotter

demanding the return of ALL of his legal property, as well as submitting another letter to

Superintendent Shannon. *Id*. at ¶¶ 140-1. In response, Superintendent Shannon reiterated that

Gay's grievance was rejected because it was procedurally deficient. *Id*. at ¶ 142. Gay then

submitted a request slip to Lt. Brennan demanding the return of ALL of his legal property. *Id*. at

¶ 143. Two weeks after that, Gay submitted yet another grievance to Ms. Dotter, who reminded

him that it was untimely and advised him to settle the matter directly with Lt. Brennan. *Id*. at ¶¶

144-6. Instead, Gay wrote another letter to Superintendent Shannon in which he complained

about Lt. Brennan and Ms. Dotter. *Id*. at ¶¶ 147. Dotter then repeated her advice to submit a

request slip to Lt. Brennan and, if the matter remained unresolved, Gay could file another

grievance incorporating Lt. Brennan's response. *Id*. at ¶ 148. But prior to receiving a response

from Lt. Brennan, Gay submitted another grievance, which Ms. Dotter returned because it was

deficient in form. *Id*. at ¶¶ 149-150.

In mid-December 2000, Gay received a response from Lt. Brennan, which encapsulated

the facts at issue and the relevant Institution policies with respect to personal property. *Id*. at ¶

154-5.

> Wilmer Gay, you were afforded the opportunity to retain (1) records box
> of LEGAL MATERIAL and keep that box in your cell along with (3) other
> boxes of personal property. The remaining (6) boxes were to be secured
> and stored here in the property room. These boxes of LEGAL
> MATERIAL could have been accessed via a request to any property Rm.

4

> Staff and received on a "Box for Box" exchange, as is current Policy per
> DOC Policy 6.3.1. This issue was attempted to be resolved as amicably as
> possible for both parties on 12/5/00. You refused any legal material that
> was offered. These (7) boxes will be retained in the property room unless
> you respond otherwise."

*Id.* at ¶ 155. Gay concluded that this policy was unconstitutional. *Id.* at ¶ 156. Despite Lt.

Brennan's explanation of why Gay could not retain ALL of this legal material in his cell, Gay

nonetheless wrote another letter to Superintendent Shannon complaining that Ms. Dotter had

refused to assign his grievance an official number. *Id.* at ¶ 157. Gay did not receive a favorable

response from Superintendent Shannon. *Id.* at ¶ 158. Gay then submitted a request slip to

Superintendent Shannon concerning all seven (7) boxes of his legal material, to which

Superintendent Shannon and Ms. Dotter reminded Gay that he can only retain so much material

in his cell at one time. *Id.* at ¶ 159-61. Gay decided he would submit a final appeal, but sent that

appeal and subsequent amendments, to the wrong office. *Id.* at ¶¶ 166-68. For Gay's

convenience, the final appeal was forwarded to the Central Office for review. *Id.* at ¶ 169.

Former Chief Grievance Coordinator denied Gay's final appeal and the denial was later than Gay

would have preferred. *Id.* at ¶ 169. .

As previously noted, Gay was temporarily incarcerated at SCI-Graterford between

September and October 2000. *Id.* at ¶¶ 57-130. Lt. Wade interviewed Gay upon his arrival at

SCI-Graterford, assigned him to a double cell, and referred him to CO McCusker. *Id.* at ¶¶ 58-

60. When CO McCusker told Gay that he was being double-celled, Gay demanded to see Lt.

Wade because Gay enjoyed single-cell status at SCI-Mahanoy. *Id.* at ¶¶ 60-1. CO McCusker

proceeded to write a Misconduct Report (314023) indicating Gay's refusal to double-cell. *Id.* at

¶¶ 62-3. Gay countered that he was not refusing an order, per se, but rather demanding an

opportunity to explain to Lt. Wade that he had single-cell status at SCI-Mahanoy. *Id.* at ¶ 64.

Regardless, Gay was placed in pre-hearing restricted custody, thus depriving him of his liberty interest in remaining in the general population. *Id.* at ¶¶ 70-2. Prior to the misconduct hearing, Gay requested that SCI-Graterford Superintendent Vaughn and Lt. Wade serve as witnesses on his behalf, submitted a witness statement that he has had Z-Code (single-cell) status since 1988, and requested that the misconduct be dismissed with prejudice and expunged from his record. *Id.* at ¶¶ 74-6. On September 11, 2000, Hearing Examiner Canino did dismiss the charges — without prejudice — because CO McCusker did not specify what the order was that Gay allegedly refused. *Id.* at ¶ 78.

Because Gay was in restricted custody pending and during the misconduct hearing, Angus Love, Esq. was unable to prepare him to testify at Bobbie Sims' trial. *Id.* at ¶¶ 79-80. Nonetheless, on the following two days, Gay was transported from SCI-Graterford to the federal courthouse in Philadelphia, to testify at the trial of *Sims v. Dragovich*. *Id.* at ¶ 83. After offering his testimony, he was handcuffed in front of the jury prior to being escorted back to SCI-Graterford. *Id.* at ¶ 86.

When he returned to SCI-Graterford, Gay learned that CO McCusker issued a new misconduct report (314034) to include the order — to get into his assigned cell — which Gay allegedly refused to obey. *Id.* at ¶ 88. Gay again requested the representation of Superintendent Vaughn and Lt. Wade, and moved for Hearing Examiner Canino's disqualification because she was a defendant in *Sims v. Dragovich*. *Id.* at ¶¶ 90-1. Canino denied both requests, found Gay guilty of the misconduct, and sentenced him to thirty (30) days in the Restricted Housing Unit ("RHU"). *Id.* at ¶¶ 92-4. Gay filed two appeals of Canino's decision to the Program Review Committee ("PRC"). *Id.* at ¶¶ 95, 99. Gay also filed a second level appeal to Superintendent Vaughn. *Id.* at ¶ 103. Prior to hearing a response from either the PRC or Superintendent

6

Vaughn, Gay appealed the misconduct disposition to Final Appeal to Chief Hearing Examiner Bitner. *Id.* at ¶ 109. Pending Bitner's response, Superintendent Vaughn informed Gay that the PRC did not receive his first level appeal until the day he was released from the RHU. *Id.* at ¶¶ 112-3. Soon thereafter, Chief Hearing Examiner Bitner informed Gay that he had not exhausted his administrative remedies prior to appealing his misconduct for Final Review. *Id.* at ¶ 114. Gay was unable to subsequently prove to Bitner that he exhausted his first and second level appeals because the PRC and Superintendent Vaughn, respectively, did not address his appeals in the proper manner. *Id.* at ¶¶ 116-121, 124-9.

As previously noted, upon Gay's return to SCI-Mahanoy in October 2000 — after his five (5) week stay at SCI-Graterford — he learned that his accumulated legal material still remained in the Institution property room pending Lt. Brennan's return to duty. *Id.* at ¶ 132. Gay also learned that his desire to retain ALL of this material in his cell, despite previous permission from a former Superintendent, was not permitted under DOC policy. *Id.* at ¶ 155. He unsuccessfully challenged the policy. *Id.* at ¶ 169.

While Gay was challenging the policy which limited the amount of property an inmate could retain in his cell, he began to assist several other inmates to file a grievance against Food Manager Yarnell for locking them in their kitchen work stations. *Id.* at ¶ 170. To that end, Gay attempted to sketch a diagram of the kitchen. *Id.* at ¶ 171. Gay asked another inmate, non-moving defendant Fulmer, to find out how many work stations that Yarnell had inmate workers locked in, because he wanted to file a grievance on their behalf. *Id.* at ¶ 173. Fulmer responded that he would let Gay know after he got back from work and offered to draw a diagram of the kitchen area. *Id.* at ¶ 174. Gay declined, saying he already had made a sketch. *Id.* at ¶ 174.

Later that day, Captain Mooney questioned Gay about a diagram and Gay mentioned that

7

Fulmer had offered to draw him one. *Id.* at ¶¶ 175-7. As a result, Captain Mooney placed Gay in administrative custody. *Id.* at ¶ 178. Three days later, Captain Mooney met Gay again and showed him the kitchen diagram that he had sketched in blue ink, which was confiscated from his cell out of his presence. *Id.* at ¶ 180. The sketch, however, also had "designs" on it which were written in black ink that Gay had nothing to do with. *Id.* at ¶ 181. Gay opines that Captain Mooney bribed non-moving defendant Fulmer to offer false testimony against him in exchange for a "BRAND NEW PAIR of SNEAKERS" and added the black ink designs to strengthen the evidence against Gay. *Id.* at ¶ 184. Captain Mooney issued a misconduct (A322177) against Gay. *Id.* at ¶ 185.

In his defense, Gay submitted both a request slip to Captain Mooney and a grievance against Captain Mooney, both explaining that the blue ink sketch of the kitchen was for a kitchen worker grievance and the black ink design was added to frame him. *Id.* at ¶¶ 185-6. Ms. Dotter informed Gay that the grievance system is not the appropriate manner to address Captain Mooney's misconduct charge. *Id.* at ¶¶ 187-8. Gay then requested that Superintendent Shannon disqualify Captain Mooney from investigating the misconduct because of personal bias, which Shannon denied. *Id.* at ¶¶ 189, 195. Meanwhile, Captain Mooney issued a second misconduct charge (640953) and — despite lacking authority to do so — ordered Gay confined to administrative custody status because he posed an escape risk. *Id.* at ¶¶ 191-3. Furthermore, Dotter rejected another grievance submission by Gay. *Id.* at ¶ 197.

On February 15, 2001, a Program Review Committee, consisting of Commonwealth defendants Deputy Superintendents Petruccia and Kneiss and Mr. Cudwadie, conducted a hearing with respect to misconduct charges A322177 and 640953. *Id.* at ¶ 199. The PRC did not allow Gay to present exculpatory evidence. *Id.* at ¶¶ 200-02. A few days later, Gay wrote a letter

to DOC Secretary Beard concerning the charges and investigation and provided Beard with copies of the appeal he filed with Superintendent Shannon. *Id.* at ¶¶ 203-5. Shannon denied the appeal and Gay filed a final appeal with the Central Office, which was rejected because it exceeded the page limit. *Id.* at ¶¶ 206, 211, 214. Rather than resubmit the final appeal to conform to Bitner's instructions within the allotted time, Gay challenged Bitner's ruling that the appeal was procedurally deficient, and eventually moved to have Bitner disqualified from ruling on the final appeal. *Id.* at ¶ 214-6. Bitner denied Gay's final appeal. *Id.* at ¶ 217.

On March 21, 2001, the same PRC conspired to transfer Gay to SCI-Huntingdon, in retaliation for testifying in *Sims v.Dragovich*. *Id.* at ¶ 210. Upon arrival, Gay's color TV was confiscated to check for contraband. *Id.* at ¶ 218. Two weeks later, the SCI-Huntingdon property officer notified Gay that the TV was not operable because there was a hole in the back of it. *Id.* Gay responded that the TV was in working condition on the day it was confiscated by Captain Mooney at SCI-Mahanoy, and turned over to Lt. Brennan in the property room. *Id.* at ¶ 219. Gay then paid to have the TV mailed to his brother and mailed a grievance back to SCI-Mahanoy contending that Captain Mooney destroyed his TV, and requesting reimbursement or replacement. *Id.* at ¶¶220-1.

Lt. Brennan responded by denying that he damaged the TV. *Id.* at ¶ 223. Superintendent Shannon interviewed Sergeant Myers, who alleged that he plugged in and then packed the TV — in Gay's presence — and found it to be operating. *Id.* at ¶ 228. Superintendent Shannon denied the appeal, stating that none of his agents damaged the TV. *Id.* at ¶ 230. Chief Grievance Coordinator James denied the final appeal. *Id.* at ¶¶ 231-2.

## III.   ARGUMENT

### A.   FED.R.CIV.P. 12(b)(1) and (b)(6) STANDARDS

The relevant inquiry in considering whether to dismiss a complaint for lack of subject matter jurisdiction based on Rule 12(b)(1), is whether the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or...is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). It is plaintiff's burden to prove that jurisdiction is proper. *See Development Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).

A Rule 12(b)(6) motion is the proper method by which the legal sufficiency of a complaint is challenged. *Great West Life Assur. Co. v. Levithan*, 834 F.Supp. 858, 861 (E.D. Pa. 1993). Under Rule 12(b)(6), the Court should accept as true all factual allegations in the complaint, draw from them all reasonable inferences, and view them in the light most favorable to plaintiff. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). Under a Rule 12(b) motion, fair inferences can also be drawn from what a plaintiff does not plead in the complaint. *Angus v. Shiley, Inc.*, 989 F.2d 142, 147 (3d Cir. 1993). The court need not credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). "[C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. [The Court] draw[s] on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).

10

**B.    THE ELEVENTH AMENDMENT BARS ALL OF THE GAY'S CLAIMS FOR DAMAGES AGAINST THE COMMONWEALTH DEFENDANTS IN THEIR OFFICIAL CAPACITIES.**

"The Eleventh Amendment is a jurisdictional bar and may be raised by a motion to dismiss." *Bell Atlantic-Pennsylvania, Inc.*, 107 F.Supp.2d at 659 (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 1111, 1114 (3d Cir. 1986)). The Eleventh Amendment immunizes states, state agencies, and state employees in their official capacities from suit in the federal courts. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 89 (1989). The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI. For over a century, the United States Supreme Court has held that the Eleventh Amendment immunizes states and state agencies from federal court suits by private parties. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Puerto Rico Aqueduct and Sewer Authority v. Metcalf and Eddy*, 506 U.S. 139 (1993); *Dellmuth v. Muth*, 491 U.S. 223 (1989); *Welch v. Texas Dept. of Highways*, 483 U.S. 468 (1987); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985); *Pennshurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). The Court has held that the Eleventh Amendment immunizes the states even where plaintiff is a citizen of the defendant state. *Hans v. Louisiana*, 134 U.S. 1 (1890). The amendment applies no matter what kind of relief is requested. *Seminole Tribe of Florida v. Florida*, 517 U.S. at 58. *Cory v. White*, 457 U.S. 85, 90, 91 (1982); *Missouri v. Fiske*, 290 U.S. 18, 26-27 (1933).

A state may consent to be sued in federal court. Pennsylvania, however, has expressly withheld its consent. 42 Pa.C.S. §8521(b); *see also Atascadero State Hospital*, 473 U.S. at 241;

11

*Florida Dept. of Health v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981) (consent must specifically subject state to suit in federal court; general waivers of sovereign immunity insufficient).

All of the Commonwealth defendants, as state employees acting in their official capacities, are protected by the Eleventh Amendment against claims for damages. Accordingly, this Court should dismiss all of Gay's claims for damages against the Commonwealth defendants, in their official capacities.

### C. COMMONWEALTH DEFENDANTS, IN THEIR OFFICIAL CAPACITIES, ARE NOT 'PERSONS' UNDER SECTION 1983 AND ARE THEREFORE IMMUNE FROM SUIT FROM DAMAGES.

*Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), "affords states a much greater protection than that afforded by the Eleventh Amendment from a Section 1983 suit by holding that states [and state officials acting in their official capacity] are not 'persons' as used in the section." *Verrichia v. Commonwealth Department of Revenue*, 639 A.2d 957, 967 (Pa.Cmwlth. 1994). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but is does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66. Moreover, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71.

Plaintiff sues the Commonwealth defendants in their official and individual capacities. None of the Commonwealth defendants, in their official capacities, are a "person" under Section 1983, and are therefore protected from suit for damages, in their official capacities. *Will*, 491 U.S. at 66.

12

**D.    THE COMPLAINT SHOWS THAT COMMONWEALTH DEFENDANTS BEARD, VAUGHN, SHANNON, JAMES, AND BITNER LACKED THE PERSONAL INVOLVEMENT REQUIRED UNDER SECTION 1983 CLAIMS.**

A plaintiff in a Section 1983 action must allege and prove that an individual defendant personally performed, directed, or knowingly permitted an illegal act. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207, 1208 (3d Cir. 1988). Individuals cannot be held liable for civil rights violations without either direct involvement in or knowledge of and acquiescence in the alleged constitutional violation. *Id.*; *Hodgin v. Roth*, 536 F. Supp. 454, 460 (E.D. Pa. 1982); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976). Traditional concepts of respondeat superior do not apply to actions brought under Section 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). An "affirmative link" between the injury and each of the defendants' conduct is essential to the showing of causation. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

To sustain a § 1983 claim against any defendant, plaintiff must prove some affirmative conduct on the defendant's part contributed to the constitutional violation. *Id.* This necessary involvement can be shown in one of two ways: "through allegations of personal direction or actual knowledge and acquiescence." *Rode, supra*; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 381 (1989) (defendants must be the "moving force [behind] the constitutional violation"), *Hampton*, 546 F.2d at 1082. A defendant's conduct must have a close causal connection to plaintiff's injury for liability to attach under 1983. *Martinez v. California*, 444 U.S. 277, 285 (1980).

The allegations Gay raises with respect to Vaughn, Shannon, and James involve a failure to act favorably upon his grievances, which do not constitute constitutional violations. *See Rauso v. Vaughn*, 2000 WL 873285 (E.D. Pa.) (failure of prison official to act favorably on

inmate's grievance is not itself a constitutional violation) (citing *Caldwell v. Hall*, 2000 WL 343229 (E.D. Pa.)); *Flanagan v. Shively*, 783 F.Supp. 922, 931 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir.), *cert. denied*, 510 U.S. 829 (1983).

Moreover, Gay does not allege that Beard, Vaughn, Shannon, James or Bitner had any involvement in the events complained of or ever had any knowledge at any time of plaintiff's claims. *Caldwell*, 2000 WL 343229 at *2; *see also Bey v. Pennsylvania Dept. of Corrections*, 98 F.Supp.2d 650 (E.D. Pa. May 31, 2000) (dismissing plaintiff's claim against prison official because there was no evidence that prison official participated in the incidents giving rise to misconducts). With no personal involvement alleged, no knowledge alleged regarding the deprivation of plaintiff's legal property, misconduct charges, or destruction of personal property, Beard, Vaughn, Shannon, Bitner and James cannot be held liable under Section 1983. Accordingly, this Court should dismiss any claims against them.

## G. COMMONWEALTH DEFENDANTS DID NOT VIOLATE GAY'S EIGHTH AMENDMENT OR FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

According to plaintiff, all of the Commonwealth defendants violated Gay's Eighth Amendment and Fourteenth Amendment Due Process rights by either depriving him of possessing the entirety of his legal material, denying his grievances, issuing false misconduct charges, depriving him of his liberty interest in remaining in the general population, or damaging his television.

Commonwealth defendants will consider the deprivation of the entirety of his legal material, the misconduct charges, and the damaged television under Eighth Amendment analysis, and the denial of his grievance requests and placement in restricted housing under Fourteenth Amendment Due Process analysis.

14

1.    **Eighth Amendment Issues**

It appears that the Eighth Amendment claims are against Captain Mooney and Lieutenant Brennan for deprivation of the entirety of his legal material, Lieutenant Wade and Officer McCusker for the first misconduct, Captain Mooney and the PRC panel of Mr. Cudwadie and Deputy Superintendents Petruccia and Kneiss for the second/third misconducts, and Captain Mooney, Lieutenant Brennan and Sergeant Myers for the destruction of the television. The Eighth Amendment prohibits any punishment which violates civilized standards of humanity and decency. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997)(citing *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). To prove a violation of the Eighth Amendment, an inmate must prove that he was seriously deprived of life's necessities, and that a prison official acted with deliberate indifference in subjecting him to that deprivation. *Id.*

The filing of a false or unfounded misconduct charge against an inmate does not constitute a deprivation of a constitutional right. *See Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). The filing of charges, even those later proven to be false, is not a constitutional violation so long as the inmate is provided any process that he is due, unless the charges were filed in retaliation for the exercise of a constitutional right. *Acosta v. McGrady*, 1996-CV-2874 (E.D.Pa. 1999) (citing *Freeman*; *Flanagan v. Shively*, 783 F.Supp. 922, 931-32 (M.D.Pa., *aff'd*, 980 F.2d 722 (3d Cir. 1992)).

Gay does not allege that he was seriously deprived of life's necessities and therefore does not state an Eighth Amendment claim with respect to the issues of his legal material or the television. *Griffin*, 112 F.3d at 709. Rather, Gay claims that the alleged deprivation of the entirety of his legal material prejudiced his ability to litigate other lawsuits and that his television worked before it was confiscated, but did not work afterwards. These claims do not constitute a

15

deprivation of life's necessities, *Griffin*, and are more accurately addressed under the First

Amendment, as will be discussed below. Accordingly, neither Captain Mooney, Lieutenant

Brennan, nor Sergeant Myers violated Gay's Eighth Amendment rights for allegedly depriving

him of all the entirety of his legal property or damaging his television, a claim based purely on

speculation.

Finally, Gay fails to state a constitutional violation with respect to any of the misconducts

he mentions in his complaint. CO McCusker issued Gay a misconduct for failure to obey an

order. Gay does not deny that he protested when CO McCusker informed him that he was

double-celled. If Gay had an issue with sharing a cell, he could have simply entered the cell and

made use of the grievance procedure which he is obviously familiar with. Instead, Gay

demanded to speak with Lt. Wade. Accordingly, there can be no constitutional violation with

respect to the misconduct which CO McCusker issued for refusing to obey an order. Similarly,

Gay does not deny that he made a sketch of the kitchen which he kept in his cell.

Notwithstanding his expressed intent to use that sketch for purposes unrelated to escape, the

sketch alone — without embellishments in another color ink or self-serving representations of a

jailhouse snitch — provided Captain Mooney with the necessary evidence to issue a misconduct.

Accordingly, Gay has failed to state an Eighth Amendment violation against either Captain

Mooney or the PRC panel (Petruccia, Kneiss, Cudwadie) which found the charges meritorious.

**2.      Due Process Issues**

It appears that Gay's due process claims are against Lt. Brennan, Ms. Dotter,

Superintendent Shannon, Superintendent Vaughn, Hearing Examiner Canino, Chief Hearing

Examiner Bitner and Chief Grievance Coordinator James. Specifically, Gay claims that Lt.

Brennan, Ms. Dotter and Superintendent Shannon denied his numerous grievances for the return

16

of the entirety of his legal material and the replacement of his television, and that Chief Hearing Examiner James agreed with both decisions. Moreover, Gay claims that Hearing Examiner Canino improperly found him guilty of disobeying CO McCusker's order, conducted a procedurally deficient hearing, and sentenced him to thirty (30) days in restricted custody. During his appeal process, Superintendent Vaughn failed to respond to his second level appeal and Chief Hearing Examiner Bitner denied his final appeals from both misconducts: refusing to obey an order and making a map.

Under the Fourteenth Amendment's Due Process Clause, a state shall not "deprive any person of life, liberty, or property, without due process of law." In general, punishment of incarcerated prisoners does not encroach upon a liberty interest under the Due Process clause. *Sandin v. Connor,* 515 U.S. 472 (1995). "Due process protection for a state created liberty interest is thus limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn,* 112 F.3d 703, 705 (1997) (quoting *Sandin,* 515 U.S. at 485).

"[D]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Griffin,* 112 F.3d at 706 (quoting *Sandin v. Connor,* 515 U.S. at 485). In *Griffin,* the Third Circuit determined that exposure to the conditions of restrictive custody for periods as long as 15 months fell within the expected parameters of the plaintiff's sentence. *Id.* at 708.

Even when an inmate is entitled to due process, "[t]he 'process' that is 'due' in the context of prison discipline is not the full blown procedure that accompanies criminal trials." *Sandin,* 515 U.S. at 503 (citations omitted). "Rather, 'due process' itself is a flexible concept, which, in the context of a prison, must take account of the legitimate needs of prison

17

administration when deciding what procedural elements basic considerations of fairness require."
*Id*. For example, "the Due Process Clause does not entitle an inmate to additional disciplinary
hearing procedure (such as the calling of a witness) unless there is a factual dispute (relevant to
guilt) that the additional procedure might help to resolve." *Id*. at 503-04.

Because such restrictive custody did not impose an atypical and significant hardship,
Gay's due process claim fails as a matter of law. Gay alleges that he was sentenced to 30 days of
disciplinary custody for failing to obey an order. He also notes that he was able to appeal the
sanction to the highest level. He does not challenge the conditions of his restrictive custody. He
simply asserts that, he was placed in administrative custody on September 6, 2000 and released
on October 5, 2000. *Id*. at ¶¶ 73-113. Gay does not complain about the conditions or duration of
the disciplinary time he received, if any, after the misconduct charge for drawing a map of the
kitchen. Therefore, neither the duration nor the conditions of either of Gay's restricted
confinements triggered any protected liberty interest or property interest under the Due Process
Clause.

With respect to the grievance procedure, an alleged failure to respond to or act favorably
upon inmate grievances, however, does not constitute constitutional violations. *See Rauso*. And
if a plaintiff is alleging a violation based upon the extent of the investigation related to a
grievance, that claim fails too because an inmate "does not have a constitutional right to require
prison officials to investigate his grievances." *Davage v. United States*, No. 97-CV-1002, 1997
WL 180336 (E.D. Pa.) (citing *Robinson v. Love*, 155 F.R.D. 535, n.3 (E.D. Pa. 1994)) (citing
*Mann v. Adams*, 855 F.2d 639 (9th Cir. Aug. 23, 1988), *cert. denied*, 488 U.S. 898 (1988)).

It is clear, through Gay's own allegations, that he received an abundance of due process.
It appears that he simultaneously submitted, appealed, and exhausted grievances at two separate

institutions: he just did not appreciate the results of the due process that was afforded to him. Accordingly, no Commonwealth defendants violated plaintiff's constitutional right to due process with respect to his misconduct hearings, disciplinary custody or grievances.

### H.    PLAINTIFF HAS FAILED TO STATE A FIRST AMENDMENT RETALIATION CLAIM

Interpreting the complaint broadly, Gay appears to claim retaliation — by all of the Commonwealth defendants — for undermining his First Amendment right to access courts. Specifically, Captain Mooney and Lt. Brennan violated Gay's First Amendment rights by restricting the amount of legal material he could possess in his cell, thus hampering his ability to press his collateral appeals of his conviction in state and federal courts. Moreover, Lt. Wade, CO McCusker, Hearing Examiner Canino, and Superintendent Vaughn violated Gay's First Amendment rights by impeding his ability to testify on the Bobbie Sims' behalf in *Sims v. Dragovich*. Thereafter, the misconduct for drawing a map of the kitchen and the destruction of his television constituted First Amendment retaliation claims for testifying in *Sims v. Dragovich*. All of these First Amendment claims fail because Gay did, in fact, testify at *Sims v. Dragovich*, there WAS an independent cause for both misconduct charges, and the damage to the television is based upon pure speculation and, at best, is attributable to negligence.

Prison officials cannot retaliate against an inmate for exercising his First Amendment rights. *See Crawford-El v. Britton*, 523 U.S. 574 (1998). To prevail on a retaliation claim, plaintiff must prove that: (1) he engaged in a constitutionally protected activity; (2) state actors, here the prison officials, retaliated by way of taking adverse action; and (3) the protected activity caused that retaliation. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Anderson v. Davilla*, 125 F.3d 148, 160 (3d Cir.1997).

19

Commonwealth defendants do not dispute that Gay's legal challenges to his criminal conviction were a constitutionally protected activity. However, limiting the amount of what Gay concedes was an "excessive" amount of legal material in his cell does not constitute an "adverse action", especially when Gay had access to the stored material on a "Box for Box" basis, as elucidated by Lt. Brennan. Complaint at ¶ 155. Therefore, the policy limiting the amount of property an inmate can retain in his cell does not constitute an "adverse action. *Mt. Healthy*. Moreover, Gay does not even allege that the enforcement of this policy actually had an adverse effect on the myriad collateral appeals he was conducting. Accordingly, neither Lt. Brennan nor Captain Mooney violated Gay's First Amendment right to access to courts by limiting the amount of legal material he could retain in his cell.

With respect to the events at SCI-Grateford — the misconduct for refusing to obey and order, the misconduct hearing, and the thirty (30) day sentence in restricted custody — the Commonwealth defendants' response is threefold. Number one, testifying for another inmate is not a constitutionally protected activity. Two, Gay was not prevented from testifying on Bobbie Sims' behalf. In fact, he was provided transportation. Thus, there was no adverse action. And three, Gay does not deny that he did not obey CO McCusker's order to double cell. Instead, he demanded to speak with Lt. Wade about his cell assignment. Therefore, it was Gay's refusal to obey an order, not any perceived protected activity to testify on someone else's behalf, that resulted in the misconduct. Accordingly, Gay has failed to state a First Amendment access to courts or retaliation claim against any of the Commonwealth defendants at SCI-Graterford: Lt. Wade, CO McCusker, Hearing Examiner Canino, or Superintendent Vaughn.

With respect to the remaining First Amendment retaliation claims, again, testifying for Bobbie Sims was not a constitutionally protected activity. More importantly, there was an

20

independent basis for issuing Gay the misconduct. In other words, whether he engaged in any litigation, at any time during his incarceration or not, Gay would have received a misconduct for drawing and storing any manner of map in his cell. He admits that he made the sketch. Regardless of whether Fulmer got a pair of sneakers for informing security, or whether Fulmer or a corrections official embellished the sketch, it does not change the fact that the underlying sketch existed and that alone, merited a misconduct charge and restricted custody. Thus, Gay's allegation that his testimony in *Sims v. Dragovich* led to a misconduct and restricted custody is based upon speculation, especially when Gay himself provides the more concrete explanation — dangerous contraband compromising Institution security — that he made by his own hand. Accordingly, Gay has failed to state a First Amendment claim with respect to the misconduct he received for drawing the sketch of the Institution kitchen.

Finally, Gay speculates that, because his television functioned when it was confiscated at SCI-Mahanoy, and did not function several months after it was shipped from SCI-Mahanoy to SCI-Huntingdon, it must have been damaged by Lt. Brennan or Captain Mooney in retaliation for testifying in *Sims v. Dragovich*. Again, his testimony does not constitute constitutionally protected activity and he therefore fails to state a retaliation claim against Lt. Brennan, Captain Mooney, or Sergeant Myers. At best, Gay could attempt to make a state law negligence claim for damage but, as will be discussed below, Commonwealth defendants are protected by sovereign immunity from such claims.

## I.     GAY HAS FAILED TO STATE A CONSPIRACY CLAIM

To support his Section 1983 claim for conspiracy, Gay must reasonably be able to show: "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by [each] party to the conspiracy." *Marchese v. Umstead*, 110 F.

Supp. 2d 361, 370 (E.D. Pa. 2000) (citations omitted); *Panayotides v. Rabenold*, 35 F. Supp. 2d

411, 419 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000). There can be no liability for a

conspiracy to violate Section 1983 without an actual violation of Section 1983. *Holt Cargo Sys.*

*Inc. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998); *Defeo v. Sill*, 810 F.

Supp. 648, 658 (E.D. Pa. 1993).

As previously stated, Gay has failed to state a Section 1983 violation for impeding his

ability to testify in *Sims v. Dragovich* or his state and federal appeals of his criminal conviction.

Neither activity was, in fact, impeded. He testified in *Sims* and he does not allege that any of his

appeals actually suffered. As such, Gay has failed to state a conspiracy claim against Captain

Mooney or Hearing Examiner Canino for conspiring with the other Commonwealth defendants

to impede  Gay's ability to testify conduct his own state and federal appeals of his criminal

conviction. Without a Section 1983 claim, there are no conspiracy claims and this Court should

dismiss Gay's conspiracy claims against all Commonwealth defendants.

### J.    SOVEREIGN IMMUNITY BARS GAY'S STATE LAW CLAIMS AGAINST COMMONWEALTH DEFENDANTS

In addition to his federal claims, Gay also asserts that Commonwealth defendants violated

his rights under Pennsylvania "State Law".  Such state law claims are barred by sovereign

immunity as a matter of law.  The Pennsylvania Constitution specifies in relevant part, "[S]uits

may be brought against the Commonwealth in such manner, in such courts and in such case as

the legislature may by law direct." Pa. Const. Art. I, § 11.  The Pennsylvania legislature has

provided "that the Commonwealth, and its officials and employees acting within the scope of

their duties, shall continue to enjoy sovereign and official immunity and remain immune from

suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. §2310; *See*

22

*also Yakowicz v. McDermott*, 120 Pa. Cmwlth. 479, 548 A.2d 1330 (1988), *appeal denied*, 565

A.2d 1168 (1989); *Moore v. Cuyler*, 114 Pa. Cmwlth. 56, 538 A.2d 111 (1988), *appeal*

*dismissed*, 567 A.2d 1040 (1990); *La Frankie v. Miklich*, 152 Pa. Cmwlth. 163, 618 A.2d 1145

(1992).

Commonwealth officials and employees are immune from suit for those actions taken

within the scope of their duties, except in those instances in which the immunity has been

specifically waived. 1 Pa. C.S.A. § 2310. The Sovereign Immunity Act in Title 42 of the

Judicial Code waives the Commonwealth's immunity only in nine narrow categories of

negligence cases. *See* 42 Pa. C.S.A. § 8522(b).[2] Other statutory waivers of immunity are also

limited.[3] The courts have consistently found state employees immune even from intentional

torts. *Pickering v. Sacavage*, 164 Pa. Cmwlth. Ct. 117, 642 A.2d 555, *appeal denied* 652 A.2d

841 (1994); *LaFrankie v. Miklich*, 152 Pa. Cmwlth. Ct. 163, 618 A.2d 1145 (1992).

There is no waiver for claims based upon the Pennsylvania Constitution. *Faust v.*

*Commonwealth Department of Revenue*, 140 Pa. Cmwlth. 387, 592 A.2d 835, 839-40 (1991).

Moreover, although the Pennsylvania Supreme Court has not ruled on the issue of whether there

is a private right of action for damages under the State Constitution, Third Circuit courts have

---

[2] The nine categories of cases for which immunity has been waived are vehicle liability; medical-professional liability; care, custody or control of personal property; Commonwealth real estate, highways and sidewalks; potholes and other dangerous conditions; care, custody or control of animals; liquor store sales; National Guard activities; and toxoids and vaccines. 42 Pa.C.S.A. Section 8522(b).

[3] The statute creating the Board of Claims constitutes a waiver of immunity for contract claims. *See Shovel Transfer and Storage v. Simpson*, 523 Pa. 235, 565 A.2d 1153, 1155 (1989). Statutory claims against Commonwealth parties may be brought under the Human Relations Act, *Mansfield State College v. Kovich*, 407 A.2d 1387 (Pa. Cmwlth. 1979); under the Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5725(b); and under the Clean Streams Law, *Dresser Industries Inc. v. Commonwealth*, 604 A.2d 1177 (Pa. Cmwlth 1992).

concluded that there is no such right under the Pennsylvania Constitution. *Douris v. Schweiker*, 299 F.Supp.2d 391, 405 (E.D.Pa 2002).

Gay's complaint, construed in his favor, does not fall within any of the statutory exceptions to sovereign immunity. *See Harris v. Rundle*, 27 Pa. Cmwlth. 445, 366 A.2d 970 (1976). *See also Moore, III v. Commonwealth Department of Justice v. Reid v. Cuyler*, 114 Pa. Cmwlth. 56, 538 A.2d 111, 113 (1988). Sovereign immunity therefore protects Commonwealth defendants from the imposition of any liability based on a state law claim.

### K.    PLAINTIFF DID NOT SUFFER ANY PHYSICAL INJURY IN CONNECTION WITH HIS CLAIMS.

Gay does not and cannot reasonably allege that he suffered any physical injury as a result of the alleged civil rights violations. Thus at most, the only injury Gay could have suffered is mental. Such claims of emotional or mental distress, however, absent a showing of physical injury, are insufficient to give rise to an inmate's § 1983 claim for compensatory damages:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e), *Allah v. Al-Hafeez*, 226 F.3d 247 (3d Cir. 2000).

Therefore, pursuant to 42 U.S.C. §1997e(e), all plaintiff's claims for compensatory damages should be dismissed.

24

## IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss all claims against the defendants, as specified in the proposed order.

D. MICHAEL FISHER
ATTORNEY GENERAL

BY: _Patrick J. McMonagle_
Patrick J. McMonagle
Deputy Attorney General
Identification No. 83890

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone No. (215) 560-2933
Fax:  (215) 560-1031

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILMER B. GAY,                          :    CIVIL ACTION
        Plaintiff             :
                                   :
        v.                          :
                                   :
ROBERT D. SHANNON, et al.,              :    NO.  02-CV-4693
        Defendants            :

## CERTIFICATE OF SERVICE

    I, Patrick J. McMonagle, hereby certify a true and correct copy of the Commonwealth

defendants Motion to Dismiss was mailed on November 26, 2003 by first class mail, postage

prepaid, to:

Wilmer Gay
Inmate AF 2709
State Correctional Institution - Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112

                                 D. MICHAEL FISHER
                                 ATTORNEY GENERAL

                        BY: *Patrick J. McMonagle*
                             Patrick J. McMonagle
                             Deputy Attorney General
                             Identification No. 83890

Office of Attorney General               Susan J. Forney
21 S. 12th Street, 3rd Floor            Chief Deputy Attorney General
Philadelphia, PA  19107-3603          Chief, Litigation Section
Telephone No. (215) 560-2933
Fax:  (215) 560-1031