IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILMER B. GAY, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT D. SHANNON; VINCENT | : | |
| MOONEY; MARY CANINO; JEFFREY | : | |
| A. BEARD; THOMAS L. JAMES; | : | |
| ROBERT S. BITNER; McCUSKER; | : | |
| DERRICK WADE; DONALD T. VAUGHN; | : | |
| WILLIAM FULMER; BERNIE CUDWODIE; | : | |
| ANTHONY L. PETRUCCIA; EDGAR M. | : | |
| KNEISS; CAROL M. DOTTER; | : | NO. 02-4693 |
| SGT. MEYERS; LT. BRENNAN | : | |
| Defendants | | |

MEMORANDUM AND ORDER

Norma L. Shapiro, S.J.                                        March 01, 2005

Plaintiff, inmate Wilmer Gay ("Gay"), filed a pro se amended complaint alleging

violations of the First, Eighth, and Fourteenth Amendments of the Constitution pursuant

to 42 U.S.C. § 1983.  Plaintiff also asserts violations of 42 U.S.C. §§ 1985(2), 1986 and

1988, and pendent state law claims.  These claims arise out of a series of incidents

concerning the treatment of Gay's personal/legal property, his assignment to a double-

cell, and Gay's drawing a diagram of work stations in a prison kitchen.

The defendants are Department of Corrections ("DOC") Secretary Beard

("Beard"), former Chief Grievance Coordinator James, Chief Hearing Examiner Bitner

("Bitner"), former Superintendent Vaughn, Superintendent Shannon, Deputy

Superintendents Petruccia and Kneiss, Hearing Examiner Canino, Lieutenants Brennan

1

and Wade, Captain Mooney, Sergeant Meyers, Corrections Officer McCusker, Ms. Dotter (retired grievance coordinator) and Mr. Cudwodie, a drug and alcohol supervisor (together, "Commonwealth Defendants"). Gay has named defendants in their official and individual capacities. William Fulmer, another inmate, is a non-moving defendant.

The Commonwealth Defendants have moved to dismiss Gay's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### FACTUAL BACKGROUND

After Gay was granted a requested transfer to SCI-Mahanoy in May 1995, he accumulated legal material because he provided legal assistance to other inmates including Bobbie Sims. Superintendent Dragovich permitted Gay to keep the following in his cell: five (5) boxes of legal material and law books; two (2) boxes of non-legal personal property; and one (1) television/radio.

Sometime in the fall of 1995, Bobbie Sims was transferred to SCI-Pittsburgh. In June, 2000, Gay was asked to testify on Sims' behalf at the trial of Sims v. Dragovich, 95-CV-6753 (E.D. Pa.). Two defendants in that action, Captain Mooney and Hearing Examiner Canino, are also named defendants in this action. On July 18, 2000, Superintendent Shannon received a court order directing him to deliver Gay to the U.S. Marshals who would transport him to Philadelphia for his court appearance in Sims v. Dragovich.

Gay's Allegations Concerning His Legal Papers

To facilitate his testimony in Sims, Gay was scheduled for transfer to SCI-

2

Graterford in September, 2000. On August 2, Lt. Brennan summoned Gay to the property

room and informed Gay he had to sign a cash slip to have eight (8) record boxes of legal

material mailed out of SCI-Mahanoy.  When Gay protested, Lt. Brennan allowed Gay to

retain certain materials, but demanded Gay ship out the remaining seven (7) boxes or they

would be destroyed.  Gay filed three grievances outlining his dissatisfaction with Lt.

Brennan's directive to ship his boxes out of the institution.  The grievances were rejected

as untimely and deficient in form.  On September 6, 2000, Gay was transferred to SCI-

Graterford, and he continued filing grievances concerning the storage of his legal material

at SCI-Mahanoy.

When Gay returned to SCI-Mahanoy in October 2000, he learned his legal

material still remained in the property room.  A new dispute then arose over whether Gay

could keep all his legal material in his cell.  Gay again filed a number of rejected

grievances.  In mid-December 2000, Lt. Brennan sent Gay the following message:

> Wilmer Gay, you were afforded the opportunity to retain (1) records box of
> LEGAL MATERIAL and keep that box in your cell along with (3) other
> boxes of personal property.  The remaining (6) boxes were to be secured and
> stored here in the property room.  These boxes of LEGAL MATERIAL could
> have been accessed via a request to any property Rm. Staff and received on a
> "Box for Box" exchange, as is current Policy per DOC Policy 6.3.1.  This
> issue was attempted to be resolved as amicably as possible for both parties on
> 12/5/00.  You refused any legal material that was offered.  These (7) boxes
> will be retained in the property room unless you respond otherwise.

Gay wrote a grievance addressed to Ms. Dotter and a letter contending the policy was

unconstitutional to Superintendent Shannon.  Superintendent Shannon and Ms. Dotter

both responded by telling Gay he could only have one box in his cell at a time.  Gay's

final appeal was denied.

3

The Double-Cell Allegations

When Gay was transferred to SCI-Graterford in September 2000, Lt. Wade assigned Gay to a double-cell.  When CO McCusker ordered Gay to enter a double-cell, Gay requested to speak first with Lt. Wade because Gay had been single-celled at SCI-Mahanoy.  McCusker then wrote a Misconduct Report and placed Gay in pre-hearing restricted custody.

While Gay was in restricted custody, Bobbie Sims' attorney, Angus R. Love, Esq., came to the prison to prepare Gay for his testimony but was unable to do so because the prison officials could not locate Gay.  Gay was later transported on two consecutive days to the federal courthouse where he testified in Sims v. Dragovich.

On September 18, 2000, a misconduct hearing was held on McCusker's allegation that Gay had refused his order to double-cell.  Gay requested Superintendent Vaughn and Lt. Wade as witnesses, and moved for Hearing Examiner Canino's disqualification because she was a named defendant in Sims v. Dragovich.  Canino denied both requests, found Gay guilty of the misconduct, and sentenced him to thirty (30) days in the Restricted Housing Unit ("RHU").  Gay filed numerous grievances and appeals.

The Kitchen Diagram Allegations

On his return to SCI-Mahanoy in October, 2000, Gay assisted several inmates in filing a grievance against Food Manager Yarnell for locking them in their kitchen work stations.  Gay attempted to sketch a diagram of the kitchen.  Gay asked non-moving defendant Fulmer to find the number of work stations involved.  Fulmer agreed and offered to draw a diagram of the kitchen area.  Gay declined because he had already made

4

a sketch.

Three days later, Captain Mooney showed Gay the kitchen diagram Gay had sketched in blue ink. The diagram had been confiscated from Gay's cell. Gay denies drawing black ink "designs" on the sketch. Gay also contends Captain Mooney bribed non-moving defendant Fulmer to offer false testimony against him in exchange for a new pair of sneakers and added the black ink designs to strengthen the evidence against Gay. Captain Mooney issued a misconduct report against Gay.

Gay, submitting both a request slip to Captain Mooney and a grievance against him, stated the blue ink sketch of the kitchen was for a kitchen worker grievance and the black ink design was added to frame him. Ms. Dotter informed Gay that the grievance system was not the appropriate manner to address Captain Mooney's misconduct charge. Superintendent Shannon denied Gay's request to disqualify Captain Mooney from investigating the misconduct because of personal bias. Meanwhile, Captain Mooney issued a second misconduct report, and ordered Gay confined to administrative custody as an escape risk.

On February 15, 2001, a Program Review Committee ("PRC"), consisting of Deputy Superintendents Petruccia and Kneiss, and Mr. Cudwodie, held a hearing with respect to Captain Mooney's misconduct charges. The PRC decided to transfer Gay to SCI-Huntingdon on March 21, 2001. Gay appealed and Chief Hearing Examiner Bitner denied Gay's final appeal.

Before he was transferred to SCI-Huntingdon, Gay's television set was confiscated to check for contraband; it was inoperable two weeks later when it was

returned.  Gay asserted the television set was in working condition on the day it was

confiscated by Captain Mooney at SCI-Mahanoy, and turned over to Lt. Brennan in the

property room.  Gay mailed a grievance to SCI-Mahanoy contending Captain Mooney

destroyed his television set and requested reimbursement or replacement.  Superintendent

Shannon interviewed Sergeant Meyers who alleged that he had plugged it in, found it

operating, and then packed it in Gay's presence. Superintendent Shannon denied that any

of his agents damaged the television set.  Chief Grievance Coordinator James denied the

final appeal.


### PROCEDURAL HISTORY

Gay filed this action on July 15, 2002.  After the court denied Gay's motion to

disqualify the Attorney General's office for an alleged conflict of interest, and granted the

Commonwealth Defendant's motion for a more definite statement, Gay filed an amended

complaint on January 13, 2003.  Construing Gay's pro se complaint liberally, he states the

following claims: (I) threatening to destroy his legal material in violation of the Eighth,

and Fourteenth Amendments; (II) filing false misconduct reports in violation of the First,

Eighth and Fourteenth Amendments; (III) depriving him of legal material in violation of

the First and Fourteenth Amendments; (IV) conspiring to place him in administrative

confinement in violation of the First, Eighth and Fourteenth Amendments; (V) destroying

his personal property in violation of the First, Eighth and Fourteenth Amendments; (VI)

taking legal documents in violation of the First and Eighth Amendments; (VII) violating a

Pennsylvania building regulation; and (VIII) conspiring to violate his First, Eighth, and

Fourteenth Amendment rights in violation of 42 U.S.C. §§ 1983, 1985(2) and 1986.


**DISCUSSION**

**A.  Standard of Review**

The Commonwealth Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1)
and 12(b)(6)**.**  On consideration of a motion to dismiss for lack of subject matter
jurisdiction [Fed. R. Civ. P. 12(b)(1)], the inquiry is whether the claim "clearly appears to
be immaterial and made solely for the purpose of obtaining jurisdiction or...is wholly
insubstantial and frivolous." Kehr Packages, Inc. V. Fidelcor, Inc., 926 F. 2d 1406, 1409
(3d Cir. 1991).  The plaintiff has the burden of proving the court has jurisdiction.
Development Fin. Corp. v. Alpha Housing & Health Care, 54 F. 3d 156, 158 (3d Cir.
1995).

On consideration of a motion to dismiss for failure to state a claim upon which
relief can be granted [Fed. R. Civ. P. 12(b)(6)], the court evaluates the legal sufficiency of
the complaint.  Great West Life Assur. Co. v. Leviathan, 834 F. Supp. 858, 861 (E.D. Pa.
1993).  The court accepts as true all factual allegations in the complaint, draws all
reasonable inferences from them, and views them in the light most favorable to the
plaintiff.  Rocks v. City of Philadelphia, 868 F. 2d 644, 645 (3d Cir. 1989).  The court
need not credit legal conclusions, but must determine if the plaintiff can prevail under the
law.  Morse v. Lower Merion School District, 132 F. 3d 902, 906 (3d Cir. 1997).  It is
"the accepted rule that a complaint should not be dismissed for failure to state a claim
unless it appears beyond doubt that the plaintiff can prove no set of facts  in support of his

claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (U.S. 1957).

### B. Sovereign Immunity

The Commonwealth Defendants argue the Eleventh Amendment is a jurisdictional bar to all Gay's claims for damages against them in their official capacities. The Eleventh Amendment states:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI.

The Eleventh Amendment immunizes states, state agencies, and state employees in their official capacities from suit in federal court. Will v. Michigan Dept. Of State Police, 491 U.S. 58, 89 (1989). A state may consent to a litigant filing an action against it in federal court, but Pennsylvania has expressly withheld its consent. 42 Pa. C.S. §8521(b); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241 (1985). The Eleventh Amendment does not bar declaratory or injunctive relief against state officials, although such relief is barred against the states themselves. Spicer v. Hilton, 618 F. 2d 232, 236 (3d Cir. 1980).

The Commonwealth Defendants, as employees of the Pennsylvania Department of Corrections, are protected by the Eleventh Amendment against claims for damages in their official capacities, and these claims will be dismissed. But claims naming the Commonwealth Defendants in their individual capacities or requesting injunctive and

8

declaratory relief survive the 11th Amendment challenge.

### C.    Gay's Allegations Concerning His Legal Papers

All of Gay's constitutional claims in this action are brought under 42 U.S.C. § 1983. Section 1983 serves as a vehicle for bringing claims against a person, acting under the color of state authority, who violates an individual's pre-existing rights, privileges, or immunities, secured by the federal Constitution and laws. Such an action may be brought to enjoin the conduct complained of and/or for monetary damages; this right of recovery extends to prisoners. Wolff v. McDonnell, 418 U.S. 539, 555 (1974).

Gay asserts his rights under the First, Eighth and Fourteenth Amendments were violated when: (1) Lt. Brennan, acting in conspiracy with Captain Mooney, threatened to destroy his legal material; (2) Lt. Brennan refused to allow him to continue keep all his legal material in his cell; and (3) his grievances and letters protesting Lt. Brennan's actions were denied.

Assuming Lt. Brennan threatened to destroy Gay's legal material, "[i]t is well-established that verbal abuse or threats alone do not state a constitutional claim," Maclean v. Secor, 876 F.Supp. 695, 698 (E.D.Pa. 1995) (citations omitted). See Murray v. Woodburn, 809 F.Supp. 383, 384 (E.D.Pa. 1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."). A constitutional claim based only on verbal threats is not a violation of the Eighth Amendment's ban on cruel and unusual punishment. See

Prisoners' Legal Ass'n, 822 F.Supp. at 189.

Gay also alleges First and Fourteenth Amendment violations against Lt. Brennan for limiting his access to his legal material and hindering his ability to litigate other lawsuits. Bounds v. Smith held an inmate's right of access to the courts is protected under the First and Fourteenth Amendments and access to legal material is critical to this right. 430 U.S. 817, 821 (1977). Protected legal material include law books, legal research, and court documents. Roman v. Jeffes, 904 F.2d 192, 198 (3d Cir. 1990). However, a prisoner is not entitled to maintain excessive legal material in a cell. Houghton v. Shafer, 392 U.S. 639 (1968); Gittlemacker v. Prasse, 428 F. 2d 1 (3d Cir. 1970).

A policy limiting the number of boxes a prisoner may have in his cell is rationally related to fire safety, contraband control and general prison order. Hackett v. Horn, 751 A. 2d 272, 275 (Pa. Commw. Ct. 2000). Even Gay concedes "he has accumulated an excessive amount" of legal material. Gay finds the limitations inconvenient, but he must plead "actual injury" to establish a Bounds violation. Lewis v. Casey, 518 U.S. 343 (1996). The Supreme Court has defined actual injury as the loss or rejection of a nonfrivolous legal claim regarding sentencing or conditions of confinement. Id. Because Gay has asserted no actual injury as a result of the conduct of Lt. Brennan, the conspiracy allegations against Captain Mooney as they relate to the treatment of Gay's legal papers must be dismissed.

After Lt. Brennan limited the amount of legal material Gay could keep in his cell, Gay filed a number of grievances. Ms.Dotter and Superintendent Shannon denied his grievances for the return of his legal material, and Chief Hearing Examiner James agreed

10

with their decisions.  Gay asserts the denial of these grievances violated his rights under the Fourteenth Amendment.

A claim for violation of due process rights under the Fourteenth Amendment requires a plaintiff show that: (1) a constitutionally protected liberty or property interest is at issue; and (2) constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents v. Roth, 408 U.S. 564 (1972).

Gay's alleges no violation of a constitutionally protected liberty or property interest. Gay had a constitutionally protected right to access his legal papers, but the papers were never destroyed and prison regulations may reasonably limit the times, places, and manner in which inmates engage in legal research and preparation of legal papers. Gittlemacker, 428 F. 2d at 7.  Gay was able to maintain access to all his materials under the box-for-box policy.

Gay also fails to show the procedures denying his grievances were constitutionally deficient.  An alleged failure to respond or react favorably to an inmate grievance is not a due process violation.  Rauso v. Vaughn, No. 96-6977, 2000 U.S. Dist. LEXIS 9035, *59 (E.D. Pa. 2000).  Gay's allegations concerning his legal papers and his subsequent grievances fail to state a claim under either the First, Eighth, or Fourteenth Amendments.


### D.    Gay's Assignment to a Double-Cell at SCI-Graterford

In September, 2000, to facilitate his testimony in Sims, Gay was transferred to SCI-Graterford where Lt. Wade assigned Gay to a double-cell.  Gay alleges his rights under the First, Eighth, and Fourteenth Amendments were violated by the following series of

11

events: (1) on September 6, 2000, Lt. Wade assigned Gay to a double-cell at SCI-Graterford despite Gay's single-cell status at SCI-Mahanoy; (2) on September 6, 2000, CO McCusker accused Gay of "serious disruption" for protesting placement in a double-cell and McCusker unjustifiably assigned Gay to RHU; (3) on September 12, 2000, Gay was unable to meet with Bobbie Sims' attorney, Angus R. Love, Esq., because he had been placed in RHU; (4) on September 14, 2000, Corrections Officer McCusker issued a misconduct report stating Gay had refused to enter the double-cell on September 6, 2000; (5) on September 18, 2000, after a hearing, and after a number of Gay's grievances and appeals were denied, Gay was assigned 30 days in RHU for disobeying McCusker's order to enter the double-cell.

Gay's Eighth Amendment claims against Lt. Wade will be dismissed because double-celling is not prohibited by the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337 (1981). "[L]iving in a double-cell is an expected ordinary incident of prison life, [and] retaining single-cell status is not a protected liberty interest." Austin v. Chesney 1995 WL 498720, at *1 (E.D.Pa.1995).

Gay alleges Fourteenth Amendment violations against: (1) McCusker for allegedly filing a false misconduct report; (2) Hearing Examiner Canino for conducting a procedurally deficient hearing and sentencing him to thirty days in restricted custody; and (3) Superintendent Vaughn for failing to respond to his second level appeal of the finding that Gay had refused to obey the order to double-cell.

Gay's claims against McCusker will be dismissed because filing a false or unfounded misconduct charge against an inmate does not constitute deprivation of a constitutional

right.  Freeman v. Rideout, 808 F. 2d 949 (2d Cir. 1986).  A prison inmate has no

constitutionally guaranteed immunity from being falsely or wrongly accused of conduct

even if it results in the deprivation of a protected liberty interest.

Gay also claims he was denied procedural due process at his disciplinary hearing.

Gay moved for Hearing Examiner Canino's disqualification because she was a named

defendant in Sims, and he requested the appearance of Superintendent Vaughn and Lt.

Wade.  Hearing Examiner Canino denied both requests.

Gay's claim that Hearing Examiner Canino should have disqualified herself  fails.  A

prisoner has a right to have a disciplinary hearing conducted by an impartial decision

maker, Withrow v. Larkin, 421 U.S. 35, 46-47 (1975), but the constitutional standard for

impermissible bias is extremely high in this setting. Aetna Life Ins. Co. v. Lavoie, 475

U.S. 813, 821 (1986).  Adjudicators enjoy a presumption of honesty and integrity,

Withrow, 421 U.S. at 47, and it is "only in the most extreme cases" where disqualification

because of bias or prejudice would be constitutionally required. Aetna Life Ins. Co., 475

U.S. at 821.

Gay also had no constitutional right to call witnesses at his hearing.  The right to call

witnesses is subject to the need for "mutual accommodation between institutional needs

and objectives and the provisions of the Constitution." Ponte v. Real, 471 U.S. 491, 495

(1985).  An "inmates' right to present witnesses is necessarily circumscribed by the

penological need to provide swift discipline in individual cases." Id.

Gay asserts the denial of his appeals violated his right of due process.  It is evident

from Gay's complaint that his second level appeal to Superintendent Vaughn and his final

appeal to Chief Hearing Examiner Bitner were made before the direct appeal of the PRC decision had been resolved. Because Gay failed to exhaust his remedies, the second level and final appeals were properly denied. All of Gay's Fourteenth Amendment claims relating to his grievances and the hearing held on his refusal to obey McCusker's order will be dismissed.

Gay alleges his placement in pre-hearing restricted custody and administrative custody violated the Eighth Amendment. The Eighth Amendment of the United States Constitution prohibits punishment violating civilized standards of humanity and decency. Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). A state may not impose punishment that shocks the conscience, involves unnecessary and wanton infliction of pain, offends evolving notions of decency, or is grossly disproportionate to the offense for which it is imposed. Estelle, 429 U.S. at 102-03.

To state a claim under the Eighth Amendment, a convicted prisoner must allege he was seriously deprived of life's necessities by a prison official acting with deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 300 (1991); Griffin v. Vaughn, 112 F. 3d 703, 709 (3d Cir. 1997). Gay does not challenge the conditions of his confinement when he was placed in restrictive and administrative custody, but only the circumstances surrounding his placement. Gay's Eighth Amendment claims as they relate to his placement in restricted and administrative custody will be dismissed.

Gay's Conspiracy Claims Regarding the Double-Celling Incident

Although none of the alleged acts relating to Gay's placement in a double-cell specifically violated his constitutional rights, Gay would still have cognizable claims

14

under 42 U.S.C. § 1983 and 1985(2) if the acts were committed in a conspiracy to prevent

him from testifying in Sims. A government action, raising no constitutional concern

when viewed in isolation, may be a constitutional tort if motivated in substantial part by a

desire to punish an individual for exercising a constitutional right. Allah v. Seiverling,

229 F.3d 220, 224-25 (3d Cir. 2000).

To state a *prima facie* conspiracy claim under Section 1983 Gay must allege: (1)

defendants deprived him of a right secured by the Constitution or laws of the United

States, Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, (1970); (2) defendants conspired

to do so while acting under color of state law, Id.; and (3) specific facts establishing a

combination, agreement, or understanding among all or between any of the defendants to

plot, plan, or conspire to carry out the alleged chain of events. Panayotides v. Rabenold

35 F.Supp.2d 411, 419 (E.D.Pa. 1999); see also, Anderson v. Davila, 125 F.3d 148, 161

(3d Cir.1997); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.2001).

Section 1985, subsection (2), pertaining to the administration of justice in the federal

judicial system, was intended to protect against direct violations of the right to attend or

testify in federal court. Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 423 (3d

Cir. 2003). The law specifically prohibits "two or more persons" from conspiring to

"deter … any party or witness in any court of the United States from attending such court,

or from testifying to any matter pending therin…" 42 U.S.C.§ 1985(2).

The Commonwealth Defendants argue Gay's conspiracy claim should be dismissed

because there must be actual deprivation of a constitutional right and Gay was not

deterred from testifying in Sims. However, an inmate can allege a valid claim even if

15

defendants' adverse action fails to deter him from exercising his First Amendment rights. Allah, 229 F.3d at 225.  The test is whether "the alleged retaliatory conduct was sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights.'" Id. (internal citation omitted).  The alleged conspiracy did not prevent Gay from testifying, but this litigious inmate may exhibit more than ordinary firmness in exercising his constitutional rights.

The Commonwealth Defendants alternatively argue Gay's conspiracy claim fails because an inmate does not have a First Amendment right to testify as a non-party witness.  No legal authority is cited to support this assertion.

Although this court is aware of no previous decision affirming an inmate's constitutional right to testify as a non-party witness, this circuit has recognized the right exists for members of the general population and it should be extended to an inmate unless his confinement requires otherwise.  Green v. Philadelphia Housing Authority, 105 Fed. 3d 881, 886 (3d. Cir. 1997).  Other circuit courts have determined that "the First Amendment protects [a non-party witness'] right to testify truthfully at trial."  Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000); Smith v. Hightower, 693 F.2d 359, 368 (5th Cir. 1982).

Prison regulations may circumscribe an inmates' First Amendment rights if they are "reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  However, the Commonwealth Defendants have called to our attention no penological interest justifying denial of an inmate's right to testify as a non-party witness. The Commonwealth Defendants make no argument that court testimony presents a

16

security risk.  Prison authorities should be able to accommodate inmates who testify as non-party witnesses; judicial determinations of relevancy, competency, and other considerations will necessarily limit the exercise of this right.

Although Gay had a constitutional right to testify in <u>Sims</u>, and adverse actions were allegedly taken against him, Gay fails to plead any causal link between his testimony and the alleged conspiracy.  Gay's conspiracy claims cannot survive a Motion to Dismiss if they are based on mere suspicion and speculation.  <u>See</u> <u>Young v. Kann</u>, 926 F.2d 1396, 1405 (3d Cir.1991).  Gay was transferred to SCI-Graterford and Lt. Wade assigned Gay to a double-cell. Gay protested this assignment and he was disciplined; "living in a double-cell is an expected ordinary incident of prison life, [and] retaining single-cell status is not a protected liberty interest."  <u>Austin</u>, 1995 WL 498720, at *1.   Plaintiff's conspiracy claim arising under Section 1983 will be dismissed.

Gay's claims under Sections 1985(2) must also be dismissed. <u>See</u> <u>Moles v. Griffy</u>, 2001 WL 1152984, at *4 (plaintiff's inability to sustain claim under Section 1983 necessarily causes his Section 1985 conspiracy claim grounded in same underlying action to fail as well); <u>Caldeira v. County of Kauai</u>, 866 F.2d 1175, 1182 (9th Cir.1989) ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.").

**E. The Kitchen Diagram Allegations**

After Gay returned to SCI-Mahanoy he began assisting inmates in filing a grievance against Food Manager Yarnell for locking them in their kitchen work stations.  On

17

February 2, 2001, Fulmer offered to draw a diagram of the kitchen for Gay to use in the grievance but Gay declined because he had already drawn a rough sketch in blue ink. Captain Mooney questioned Gay about a diagram later that day and Gay said Fulmer had offered to draw him one. Three days later, Captain Mooney confiscated the sketch from Gay's cell and placed him in administrative custody. Two misconduct reports were issued, a hearing was held, and Gay was transferred to SCI-Huntingdon. Gay also claims on March 21, 2001, before he was transferred, Captain Mooney confiscated his television set to search it for contraband. When it was returned two weeks later, there was a hole in its back and it was inoperable.

Gay admits creating a diagram and keeping it in his cell in possible violation of prison policy, but alleges Captain Mooney altered the diagram and destroyed his television set to retaliate for testifying against Mooney in Sims. The requirements for pleading retaliation under Section 1983 mirror the test for conspiracy. A plaintiff must plead: (1) the conduct which led to the alleged retaliation was constitutionally protected, (2) some adverse action at the hands of the prison officials, and (3) a causal link between the exercise of his constitutional rights and the adverse action. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir.1997); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.2001).

Gay had a constitutional right to testify as a non-party witness and in deciding this Motion to Dismiss we must accept as true Gay's allegations: (1) Captain Mooney altered the diagram; (2) inmate Fulmer offered false testimony substantiating Captain Mooney's version of events; and (3) Captain Mooney intentionally destroyed his television set. Rocks v. City of Philadelphia, 868 F. 2d 644, 645 (3d Cir. 1989) (Court must "accept as

18

true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.")

Prison officials may curtail First Amendment freedoms to preserve order, stability or security, but they may not retaliate against an inmate for engaging in communication not threatening prison order, the security of other inmates or staff, or implicating other legitimate penological interests. Gay's alleges a prima facie conspiracy claim against Captain Mooney under 42 U.S.C. § 1983 that survives a motion to dismiss. Gay's conspiracy claim against fellow inmate, William Fulmer, survives because a private party acting in conspiracy with a state actor can be held liable under § 1983. Adickes v. S.H. Kress and Co., 398 U.S. 260 (1970). Gay's conspiracy claim asserted under 42 U.S.C. § 1985(2) against Mooney and Fulmer also survives.

Gay alleges that the members of the PRC, defendants Kneiss, Petruccia and Cudwodie, violated his due process rights when they held a hearing on this matter. The hearing resulted in Gay being transferred from SCI-Mahanoy to SCI-Huntingdon. An intrastate prison transfer does not directly implicate the Due Process Clause of the Fourteenth Amendment. See, Meachum v. Fano, 427 U.S. 215 (1976); Montanye v. Haymes, 427 U.S. 236 (1976). Gay's Fourteenth Amendment claim against the members of this PRC will be dismissed because he has failed to demonstrate a constitutionally protected liberty or property interest was at issue. Board of Regents v. Roth, 408 U.S. 564 (1972).

## F. Gay's Claims Under 42 U.S.C. § 1986

Section 1986 provides a cause of action against anyone who, having knowledge that

19

any of the wrongs mentioned in Section 1985 are about to be committed, "and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." 42 U.S.C. § 1986. All the alleged acts of retaliation occurred by March 2001, and Gay filed his complaint on July 15, 2002. Therefore, Gay's Section 1986 claims are barred by the law's one year statute of limitations and will be dismissed.

**G.  Gay's Claims Under 42 U.S.C. § 1988**

Section 1988, the Civil Rights Attorney's Fees Awards Act, authorizes the award of reasonable attorney's fees in a successful action brought to enforce a Section 1983 action, but *pro se* litigants are not entitled to attorney's fees.  Kay v. Ehrler, 499 U.S. 432, 435 (1991).  Therefore, Gay's *pro se* action for attorney fees does not assert a valid claim under Section 1988 and will be dismissed.

**H.        Gay's State Law Claims**

Plaintiff alleges that construction of "iron fences" on an unspecified date in the kitchen work area was in violation of 35 P.S. § 1221 and 18 Pa. C.S.A. § 2705.  Plaintiff sent a letter to "Jerry D. Seville, Board Reviewer, Department of Labor and Industry" regarding the alleged violation.  Plaintiff also states that Food Manager Robert Yarnell, apparently using the "iron fences," locked inmates into their kitchen work stations. Neither Mr. Seville nor Mr. Yarnell were named as defendants and the complaint does not specify against whom these claim are directed.  The state law claims will be dismissed without prejudice.  An appropriate order follows.

20