IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILMER B. GAY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT D. SHANNON; VINCENT | : | |
| MOONEY; MARY CANINO; JEFFREY | : | |
| A. BEARD; THOMAS L. JAMES; | : | |
| ROBERT S. BITNER; McCUSKER; | : | |
| DERRICK WADE; DONALD T. VAUGHN; | : | |
| WILLIAM FULMER; BERNIE CUDWODIE; | : | |
| ANTHONY L. PETRUCCIA; EDGAR M. | : | |
| KNEISS; CAROL M. DOTTER; | : | |
| SGT. MEYERS; LT. BRENNAN | : | NO. 02-4693 |

**MEMORANDUM AND ORDER**

**Norma L. Shapiro, S.J.**                                          November 21, 2005

Plaintiff Wilmer Gay ("Gay"), pro se, is a prisoner at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). Gay has filed an amended complaint alleging: violations of the First, Eighth, and Fourteenth Amendments of the Constitution pursuant to 42 U.S.C. § 1983; violations of 42 U.S.C. §§ 1985(2), 1986 and 1988; and pendent state law claims. Defendants initially included a number of Pennsylvania government and prison officials (together, "Commonwealth defendants") and one fellow inmate, William Fulmer. The Commonwealth defendants moved to dismiss the complaint and the motion was granted on March 1, 2005 as to

1

all of them except Major Vincent Mooney ("Mooney").[1]  At the time of the events complained of, then-Captain Mooney was the intelligence captain at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), where Gay was incarcerated.  Gay alleges Mooney placed him in administrative confinement, had him transferred to SCI-Huntingdon, and damaged his color television in retaliation for Gay's constitutionally protected testimony on behalf of a fellow inmate in a civil action against prison officials.  Gay also alleges Fulmer provided false information to Mooney to facilitate adverse action against Gay.  Before the Court are cross-motions for summary judgment by Gay (against Mooney and Fulmer) and Mooney.  Gay's motion for summary judgment will be denied and Mooney's motion for summary judgment will be granted because there is no genuine issue of material fact; Gay is not entitled to judgment as a matter of law against Fulmer or Mooney; and Mooney and Fulmer are entitled to judgment as a matter of law.  An appropriate Order follows.

**I. BACKGROUND**

Gay was convicted of first degree murder in April 1972 and sentenced to life imprisonment. Dep. of Wilmer Gay, June 10, 2005 ("Gay Dep.") at 5:2-9.  In May 1995, Gay was granted a requested transfer to SCI-Mahanoy.  In September 2000, Gay was transferred to SCI-Graterford so he could testify on behalf of a fellow inmate, Bobbie Sims,  at the trial of Sims v. Dragovich, 95-CV-6753 (E.D. Pa.); Gay Dep. at 24:19-35.  Captain (now Major) Mooney, the remaining Commonwealth defendant in this action, was also a named defendant in Sims' action.

---

[1] William Fulmer has not participated in this action.  He was not served with Gay's Motion for Summary Judgment.

Judgment was entered against Sims on a jury verdict on September 18, 2000. See Order of 9/15/2000 in Sims v. Dragovich, 95-CV-6753 (E.D. Pa.); Sims v. Dragovic, 43 Fed. Appx. 523 (3d Cir. 2002) (affirming judgment).

After the trial, Gay was returned to SCI-Mahanoy and was housed on F Unit. Gay Dep. at 9:21. Non-moving defendant Fulmer was also housed on F Unit; he and Gay knew each other, as Fulmer periodically asked Gay for legal advice. Id. at 14:8-21. Around the beginning of February, 2001, several inmate kitchen workers complained to Gay about unsafe working conditions in the kitchen, and Gay agreed to file an inmate grievance on their behalf. Id. at 15-16. On the evening of February 1, Gay sketched a diagram of the kitchen area. Id. at 16; Mooney's Ex.1 at 25 (sketch found in Gay's cell). The following morning, Gay asked Fulmer, who worked in the kitchen, to count the number of work stations so he could augment his diagram in preparation for filing the grievance. Id. at 15:1-3, 21:4-8. Fulmer asked if he should make a sketch of his own, but Gay told him he had no need for it. Gay's Declaration in Support of Pl.'s Mot. for Summ. J. ¶ 10-11.

On February 2, decided to draw his own kitchen diagram. See Gay Dep. at 30:19-23, 31:1-3. A food service instructor saw Fulmer making the diagram, confiscated it, and reported the matter to Food Service Manager Yarnell. Mooney Ex. 1 (Investigation concerning Gay, AF2709) at 20. Yarnell referred the matter to Mooney, who, as intelligence captain, was in charge of investigating all criminal and institutional violations by SCI-Mahanoy staff and inmates. Declaration of Vincent Mooney ("Mooney Decl.") at ¶ 4; Mooney Ex. 1 at 20.

Mooney interviewed Fulmer, who told him that Gay had asked him to draw the diagram. Mooney Ex. 1 at 20. Mooney then interviewed Gay, who admitted being asked by another

inmate whether Gay wanted a diagram; Gay did not mention his own sketch. Gay Dep. at 33-34. Mooney placed both Gay and Fulmer in a restricted housing unit under administrative custody status pending investigation. Id. at 34:14-20. That day, Gay was issued the following:

> Notice of Confinement (Pending Investigation)
>
> Inmate Gay AG-2709, you are being placed in administrative custody under DC-ADM 802, paragraph 6, section F. The inmate has been charged with or is under investigation for a violation of the institutional rules and there is a need for increased control pending disposition of charges or completion of the investigation. This is not disciplinary action.

Mooney Ex. 1 at 28 (Form DC-141 of 2/2/01); Gay Dep. 35-6.

A search of Gay's cell revealed his sketch of the kitchen area. Mooney confronted Gay with it. Gay Dep. 35-37. The sketch Mooney showed Gay included labels such as "locked gate," "Yarnell's Office," and "Staff Dining Hall," and also showed some buildings outside the wall perimeter. See Mooney's Ex.1 at 25 (Gay sketch). Gay admitted to drawing part of the sketch in preparation for filing a grievance about unsafe conditions in the kitchen, but claimed it had been augmented by someone else to frame him. Gay Decl. ¶ 18-19; Mooney, Ex. 1 at 23 (Gay's Request to Staff Member, 2/5/2001). Mooney told Gay the handwriting was identical throughout the diagram and returned him to administrative confinement in the restricted housing unit. Id. at ¶ 185; Dep. at 38. On February 12, Mooney issued Gay another Notice of Confinement as follows: "You are being confined in [administrative confinement] status per DC-ADM 802 paragraph 6 section E–the inmate would pose an escape risk in a less secure status. This is not a disciplinary action." The notice also stated that Gay would "remain [in] present status pending review by

[Program Review Committee.]" Mooney Ex. 1 at 27 (Form DC-141 or 2/12/2001).[2]

A three-person Program Review Committee (not including Mooney) conducted a hearing on the issue on February 15, deemed Gay an "escape risk," and recommended he be transferred to "any institution other than a prototypical." Ex. H-19 to Pl's Mot. for Summ. J. (Program Review Committee's Decision and Its Rationale); unnumbered Ex. to Pl.'s Mot. for Summ. J. (Pennsylvania Department of Corrections Transfer Petition.) Gay was transferred to SCI-Huntingdon on March 21. Pl.'s First Am. Compl. ("Pl.'s Compl.") at ¶¶ 199, 210. When Gay received his belongings at SCI-Huntingdon, he found that his color television–which he stated "was confiscated on February 21 and placed in the hands of Property Room Officer J. Brennan," Ex. H-38 to Pl.'s Mot. for Summ. J.–was not operable because of a hole in the back. Pl.' Compl. at ¶ 218. Gay paid to have the T.V. mailed to his brother and mailed a grievance to SCI-Mahanoy, contending that Mooney had damaged his T.V. and demanding reimbursement or replacement. Pl.'s Compl. at ¶¶ 220-21; App. K-1 to Pl.'s Mot. for Summ. J. In response to his grievance, J. Brennan sent Gay an "Official Inmate Grievance–Initial Interview Response" stating that Gay's "T.V. was . . . checked when it was originally received by the Property Room on 2/2/01. It was operable then and when [Gay was] transferred to SCI-Huntingdon on 3/21/01." App. K-2 to Pl.'s Mot. for Summ. J. On April 27, 2001, the SCI-Mahanoy Superintendent sent Gay a further Response to Official Inmate Grievance, writing that "Sgt. Meyers . . . reports that the T.V. was plugged in, packed and found to be operating **in your presence**. . . ." App. K-4 to Pl.'s Mot. for Summ. J. (emphasis in original). Chief Grievance

---

[2] Gay's appeal of the administrative confinement was denied on April 24, 2001. Ex. H-34 to Pl.'s Mot. for Summ. J. (Letter from Robert S. Bitner, Chief Hearing Exhaminer, to Wilmer Gay).

Coordinator James denied the final appeal because Gay had "provided no evidence to support" his claim that Mooney had damaged his T.V.

## II. DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Only a factual dispute that might affect the outcome under governing law precludes the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, a court must evaluate the facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Id. at 255. The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. Id. at 252. A fact is material if it might affect the outcome of the suit under the governing substantive law. Id. at 255.

To prevail on his retaliation claim, Gay must prove: (1) he engaged in a protected activity; (2) state actors (or private actors acting under color of state law) took adverse action; and (3) the adverse action was in retaliation for the protected activity. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997). The plaintiff bears the initial burden of proving his constitutionally protected conduct was a "substantial or motivating factor" in the decision to discipline him. Mt. Healthy, 429 U.S. at 287. Where an inmate complains of adverse action by prison officials, it is not enough to prove that his exercise of a constitutional right was a substantial or motivating factor in the

challenged decision; prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

**a. Plaintiff's motion for summary judgment as to Fulmer**

Gay alleges that Fulmer conspired with Mooney by giving false testimony to facilitate Mooney's disciplinary actions against Gay. See Pl.'s Mot. for Summ. J. at 8. There is no evidence beyond Gay's allegations that Fulmer, an inmate, acted under color of state law or in concert with state actors. See United States v. Price, 383 U.S. 787, 794 n. 7 (1966) (for purposes of § 1983, the "under color of state law" requirement has been treated as identical to the "state action" requirement under Fourteenth Amendment jurisprudence); Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir.1995) (in determining whether this standard is met, court inquires whether there is a sufficiently close nexus between the State and the challenged action of defendants so that the challenged action may be fairly treated as that of the State itself.) Gay's claim against Fulmer fails as a matter of law; his motion for summary judgment will be denied as to Fulmer. Summary judgment will be granted in Fulmer's favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 ("district courts are widely acknowledged to possess the power to enter summary judgment sua sponte").

**b. Plaintiff's motion for summary judgment as to Mooney**

Mooney does not contest that he is a state official, that Gay engaged in a protected activity (his testimony in Sims' civil action), or that Gay suffered adverse action; he argues: (1) the administrative confinement and the transfer to SCI-Huntingdon were not motivated by Gay's testimony on Sims' behalf, but there was a legitimate penological justification because of

7

concerns raised by Gay's sketch of the kitchen area, since it might have been prepared in view of an escape or of an inmate takeover of the kitchen; and (2) Mooney had nothing to do with shipping and any damage to Gay's T.V. set.

The facts regarding Gay's confinement and transfer are undisputed in all material respects. In September 2000, Gay testified against Mooney and other defendants at the trial of an action brought by fellow inmate Bobbie Sims. In February 2001, Fulmer was caught making a diagram of the kitchen and told prison officials that Gay had asked him to do this, but Fulmer did not know why. When Gay was interviewed about the matter, he was initially evasive about the purpose of Fulmer's sketch and failed to mention his own. Gay admits to drawing at least part of the diagram later found in his cell. The decision to transfer him to a different institution was made by a three-person committee that did not include Mooney. As a matter of law, even if Gay could show that his testimony in Sims' action against Mooney was a factor in Gay's administrative confinement and eventual transfer to SCI-Huntingdon, Gay's apparent cooperation with another inmate in drawing a sketch of the kitchen area could reasonably justify these actions. See Rauser v. Horn, 241 F.3d at 333 ("the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials, who possess the necessary expertise").

As to the damage to the television set, there is substantial evidence that the television set was operable when it left SCI-Huntingdon and no evidence that Mooney was involved with the storing, packing, or transportation of the set. During the investigation of Gay's claim, two different prison officials (Sgt. Meyers and Lt. Brennan) stated that Gay's television was operable when it was packed for transfer; Meyers reported that Gay was present when the T.V. was tested

prior to shipping and witnessed its being packed. Bare assertions, conclusory allegations or suspicions are not sufficient to survive summary judgment. Fireman's Ins. Co. v. Du Fresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment will be granted on Gay's claim of retaliation against Mooney.

**III. CONCLUSION**

Gay's motion for summary judgment will be denied: (1) as to Fulmer, because there is no evidence that Fulmer acted under color of state law or in concert with state actors; (2) as to Mooney, because (a) there is no evidence that he was involved in any way in the damage of Gay's property and (b) even if Gay's testimony on Sims' behalf were a motivating factor in Gay's administrative confinement and transfer, Mooney had legitimate penological reasons for them; thus, Gay cannot prove that Mooney retaliated against him for his protected speech. For the same reasons, Mooney's motion for summary judgment will be granted; summary judgment will also be granted in favor of Fulmer, since Gay's claim against him fails as a matter of law.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILMER B. GAY,** | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **ROBERT D. SHANNON; VINCENT** | : | |
| **MOONEY; MARY CANINO; JEFFREY** | : | |
| **A. BEARD; THOMAS L. JAMES;** | : | |
| **ROBERT S. BITNER; McCUSKER;** | : | |
| **DERRICK WADE; DONALD T. VAUGHN;** | : | |
| **WILLIAM FULMER; BERNIE CUDWODIE;** | : | |
| **ANTHONY L. PETRUCCIA; EDGAR M.** | : | |
| **KNEISS; CAROL M. DOTTER;** | : | |
| **SGT. MEYERS; LT. BRENNAN,** | : | |
| **Defendants.** | : | NO. 02-4693 |

## ORDER

AND NOW, this 21st day of November, 2005, upon consideration of Plaintiff's Motion for Summary Judgment, Defendant Mooney's Response, Defendant Mooney's Cross Motion for Summary Judgment, and Plaintiff's Declaration In Opposition to Defendant Mooney's Cross-Motion for Summary Judgment, it is ORDERED that:

    1. Plaintiff's Motion for Summary Judgment (Paper # 95) is **DENIED.**

    2. Defendant Mooney's Motion for Summary Judgment (Paper #98) is **GRANTED**.

    3. Summary judgment is granted as to Defendant Fulmer.

                                                    Norma L. Shapiro

                                                                                                S.J.